Good morning, your honors. May it please the court, Mark Windsor on behalf of Mr. Fauncher. I would like to reserve three minutes for rebuttal if possible. Your honors, under any burden of proof, the fact, the single fact in this case is insufficient to satisfy that burden for application of a five-level enhancement against Mr. Fauncher in what would have been starting out as an offense level seven. for a significant or substantial part of the fraud scheme being placed outside of the United States. That's because the single fact relied upon by both the government and the court was a statement by Mr. Fauncher that in a lengthy statement that he made to law enforcement at his probation office just before being arrested, that at some point somebody told him that the money was coming from overseas. Now, that single fact by itself is certainly not enough, and there's not even any inference that can reasonably be made that would satisfy any burden of proof with regard to application of the enhancement. I think it's important to note that the Treadwell case does not apply to this case. Staten applies to this case. Treadwell must be limited in application to cases like drug quantity in a drug conspiracy case and amount of financial loss in a financial fraud case. Cases where it is necessary when you enter a plea of guilty that you admit that there was some quantity of drugs and that the only issue in sentencing is what's the magnitude of that quantity. Or you admit, as the case here is in a fraud case, which is what Treadwell was, that some of the ---- So here the question was whether it was reasonably foreseeable. You agree with that, right? I agree. And with this, Your Honor, I'm getting to the issue of what standard of proof should have been. Well, I know which one you think it should, and I just want to ask you more, I guess, directed questions. I mean, if he had actual knowledge, which he admitted that he knew the money was coming from overseas, isn't that enough? As it turns out, Your Honor, his knowledge was false. The money did not come from overseas. He was told that the money was coming from overseas, but in the context of what he was doing was he was opening a bank account with the idea that this was for some purpose, some nefarious purpose on the part of his co-schemers. And then he was told to go into the bank and withdraw the money that would later be put into that account and divide up the cash. He'd keep a little and give most of it to the other people. He was then apparently told at some point that the money coming into his account was coming from overseas. The only inference that could be made from that, first of all, is that that's the victim's money. The victim's money is coming from overseas. That's not knowledge that some part of the scheme is overseas. Second of all, that turns out to be not correct. The money was actually coming from domestic bank accounts into his domestic bank account at a local branch office. So what little he's purported to have known was actually false. Does that address the... Well, so you're saying there was no overseas nexus at all, not just for him, for anybody. Oh, no, no. There was a whole part of the scheme that was in Egypt. But what they did in Egypt was they obtained somehow through the Internet information about victims and their accounts and their numbers, and they called their guy in the United States, who then called his runner in the United States, who then got little people like Mr. Foncher to go open up these accounts. That was the international component of this scheme, and there's no evidence that Mr. Foncher had any knowledge of the existence of that scheme, certainly even that it existed and definitely no knowledge whatsoever and no inference can be made that it was a substantial part of the scheme. What Mr. Foncher saw was a person dealing directly with him. That was a woman who was telling him that there's some other guy who is telling her what to do, and she's telling him to open up an account. He goes to a local branch, opens up a local bank account. Money comes into that account in U.S. dollars. He takes it out as soon as it comes in. Nothing in that scenario can be reasonably inferred to satisfy any burden of proof. This is the most direct and simple way of dealing with this case. It's simply an abuse of discretion to find under that one single fact, that one statement, that somehow under any burden it's been established that the five-level enhancement should apply. And again, it's important to consider that the court in this case departed from what they found to be a range of 15 to 21 months. They departed to 11 months, not just based on a finding that, well, I find that it was foreseeable to him he probably didn't know too much about it, which is an interesting way of dealing with the issue, but she also specifically stated she departed for what appears to be a minor role in the case, although she did not give a specific reduction for that. His performance on supervised release, he had gotten a job, she found that admirable, that's his quote, and a few other factors. So as far as the impact of this five levels on the sentence is concerned, I think it's reasonable to assume that he got 11 months, but had this five-level enhancement not applied, he would have been in a four- to ten-month range, and he could have easily qualified for no custody at all. He'd gotten a brand-new job. He'd already done three months in custody. Even if she just settled on the low end of the guideline range, that would have been an extra month. It probably wouldn't have been worth it for him to go to prison for a month. So there was a lot at stake here. This basically had a dramatic impact on Mr. Fauncher's results in this case, and it's just the type of case under the case law. And while I don't like the test in Valencia and Jordan, I think it's unwieldy, it no longer really applies certain portions of it. Certainly, when it has this type of impact on somebody's sentence, this is exactly the type of case where clear and convincing evidence should have been applied. So if the Court does get to that issue, I would submit that it's clear and convincing that it would have to have been used. As far as the role is concerned, the Government appears to make the argument that there were a lot of people in this case who did exactly what Mr. Fauncher did, and therefore, role should not apply. If the Court's going to follow that line of reasoning, then the Government could certainly assure in any of these large conspiracy cases that Mr. Fauncher's role should not apply. The other thing I would say is that no one ever gets role just by indicting a large quantity of low-level participants. It's clear in this case that there was an upper echelon of participants who had no contact with these lower-level people. Mr. Fauncher was right on par with all of the low-level people involved. He was a perfect candidate for role. And this is especially true in light of the fact that although the Court never made any finding that a loss amount attributable to Mr. Fauncher raised above $5,000, she did find that somehow he was on the hook for this apparatus in Egypt and this component of the fraud in Egypt that was involved in the case. And that's a classic situation where if that's going to be the scope for which Mr. Fauncher is going to be liable, then the fact that he was just a low-level Tier 1 participant clearly cries out for a role reduction in that circumstance. Absent any questions, I'll reserve the balance for now. Thank you. You may proceed. May it please the Court, Ronald Cheng for the United States. In this particular case, the issue revolves around the so-called overseas nexus enhancement. The net result of this finding was that defendant was sentenced at 11 months, one month above the high end of the unenhanced range of 4 to 10 months. We would submit that this is not the situation as indicated in this Court's en banc decision in Restrepo where there was an extremely disproportionate impact on the sentence. This is not like cases like Hopper or Jordan or Mezas de Jesus that I believe Judge Pregerson is familiar with. This is quite a different case, and under the six-part analysis of Valencia, which remains the law of this Court after Staten, under that standard, all of the factors support application of the preponderance standard of proof. With regard to the fifth and sixth factors, while at sentencing in the district court, the government recognized that in theory those factors would support the defense. We are now on appeal, and we are looking at the sentence imposed by the district court. This 11-month sentence was below the enhanced range of level 10, equivalent to a 15- to 21-month sentence. The 11-month sentence imposed would be equivalent at the next highest level to level 8, which means that there is only a three-level enhancement from the unenhanced offense level. Finally, with regard to the length of the term, there is not a doubling here. The 11-month sentence, as I stated earlier, was one month higher than the high end of the unenhanced range, and this sentence would be on all fours with the sentence in Johansson, where the Court determined that both of these factors, in fact, favored the government and the application of the preponderance standard. Mr. Windsor argues that you just heard that because he was at 4 to 10 months, he would have been eligible possibly for some other form of sentence other than incarceration. What's your response to that? We would dispute that. It's simply not the case under the district court's finding that there would have been a lockstep, downward movement in the sentence. The Court recognized the factors that the defense was arguing for, but still believed that an 11-month sentence was appropriate based upon the defendant's criminal history, which included a prior fraud offense, two prior narcotics offenses, a not unblemished record while on pretrial release, and given the fact that the defendant had done this conduct twice, once in July, I believe, and once in October of 2008, which was the count of conviction. Given all of these factors that the Court considered, it was reasonable to impose an 11-month sentence, and therefore even if we were in a 4 to 10-month range, it would be just as reasonable to infer that a sentence at the high end or some term of incarceration would have been imposed than defendant's supposition that there would have been some kind of a probationary term. I want to make sure I understand. When you said only a three-level enhancement, I mean, the range that he was looking at that Mr. Windsor argued for was 4 to 10 months. He received a sentence of 11 months. Where's the three-level? I wanted to follow your line of... Let me try to go back. The unenhanced range is at a level 5, criminal history 4. That's 4 to 10 months. If the range is enhanced, then the net result after the acceptance of responsibility adjustment is level 10, offense level 4. That's 15 to 21 months. The 11-month sentence, assuming that you look at the highest range available, would be level 8 in criminal history 4. That represents a three-level increase over the unenhanced level 5. And this approach has been approved of in Johansson, as well as more recently in Alley cited in our brief, a 2010 case, which looked at the final sentence imposed by the court, a sentence of 60 months, which was well below the guideline range as calculated with the disputed factor. I would like to make a point with regard to the scheme and whether or not the overseas activity was a substantial part of that. The way that this scheme operated was that people at the higher levels, including codefendant Lucas, Mersey, and Clark, came into contact with individuals like themselves in Egypt. The so-called phishing subjects in Egypt had the ability to hack their way into victim accounts in the United States, including Bank of America and Wells Fargo, and then take the contents of those accounts and transfer those amounts to other accounts. What the persons in Egypt needed was a mechanism for that money to be pulled out. They couldn't do that from Egypt, and so that's when defendant Lucas got in touch with his friends and those friends got in touch with other people, including people like Mr. Fauncher in this case, to set up fraudulent accounts locally. And those were the destination accounts into which the phishing subjects transferred the fraud proceeds from the victim bank accounts. So while the money began in the United States and ended in the United States, it had to go through the phishing subjects in Egypt. Without the phishing subjects in Egypt, the scheme could not have worked. So when Mr. Fauncher says that the money came from overseas, as a technical matter, yes, the money is not coming from a bank account in Egypt, but it is coming through an overseas mechanism, namely the phishing subjects in Egypt. And so when he says, I was told the money came from out of the country, and then when he confirmed for the agent the money came from overseas, that is accurate. It's not just his statement alone. It's the proof that was adduced before the district court and on which the parties do not dispute that, in fact, there was this overseas connection. And Mr. Fauncher admitted that he knew the money was coming from overseas, but I guess does that admission show that he knew a substantial part of the scheme was committed outside of the United States and isn't that what is needed? Again, that is not disputed in the briefing, and it is warranted that the defense make that concession because for the amounts that he was held accountable for, that is the approximately $4,500 for the two sets of bank accounts that he opened, those amounts were connected directly with the phishing scheme. That's what he was held liable for under relevant conduct, and for that relevant conduct a substantial amount of that activity was connected with so-called overseas activity in the case. And so that's what we would submit, at least, that that's what the enhancement should be premised upon. And the Valencia factors? We believe all of those support application of the preponderance standard. Of course, we preserve the position that preponderance should apply whatever the case, but we recognize that this Court in State can address this matter, although that was before the Third Circuit's decision. At the sentencing hearing, didn't you concede the last two Valencia factors? Well, that goes back to the point that I raised earlier. We were in an ex-ante position, so we didn't know where the district court would be sentencing. We had to assume the sentence would be within the 15-to-21-month enhanced range. We now have the benefit of seeing what the sentence is that the district court imposed. And so based upon that actual result, which State and Johansson and other cases of this Court say we must look at, we can now reevaluate those two factors and say that, in fact, there was not a five-level enhancement, there was a three-level enhancement, and, in fact, there was not a doubling of the actual sentence imposed. So that's why we are where we are. We recognize that's different from what we said in the district court. But, again, that was an ex-ante position. Finally, with regard to roll, the defense says that the government could simply go out and indict all low-level players and, therefore, avoid the issue. I would just submit that we are faced with the scheme as it existed here. This scheme, as we said over and over again to the district court, depended on people like Mr. Fonsher. This scheme was done $1,000, $2,000 at a time. This is not a telemarketing scheme or sophisticated investment fraud scheme where the scheme is committed $10,000 or a million dollars at a time. It was always at this small scale. And so for that reason, because the average participant is a low-level player like Mr. Fonsher, we would submit that the district court did not commit clear error in finding that a defendant, in fact, was the average participant and was not entitled to a minor roll adjustment. I see my time is drawing near. If there are no further questions, we'll submit the matter. Thank you. It looks like you have about four minutes. Thank you, Your Honor. Under CARDI, first of all, the district court must determine accurately the guideline range. They are also instructed to keep that guideline range in mind throughout the process. It's for that reason that the appropriate analysis here is, did this have a dramatic impact on the guideline range found by the court? The cases cited by the government do not say that you just take the ultimate sentence and decide, well, was it really a bad sentence or not. No, they say that if the fact has an impact, we're only going to deal with facts that have an impact on the sentence, not facts that may theoretically have it. And here it clearly did. The first thing the district court did was make a declaration that I find the base offense level to be 10 after acceptance of responsibility, and I apply from a level 7, a 5-level enhancement. That's the inquiry. That's what's here. The fact that she went down to 11 months is completely irrelevant to this analysis, but to the extent that it has any relevance for this Court, I would direct the Court's attention to page 53 of our excerpt of record. That is where her analysis begins as far as justifying her sentence. And that is where she says, you know, he didn't have a big role in this case, and he accepted responsibility and told the agents everything when he was arrested. And that goes a long way, by the way, towards showing his lack of sophistication. I mean, he was pretty forthcoming when he talked to them. It was a very lengthy interview, and he really didn't hold anything back. She puts that in her analysis for going down four months, but she doesn't go down four months until she starts at a range of 15 to 21 months, and that's the relevant inquiry here. This Court should not go where the government wants it to go and say, well, we're going to look at the final sentence. We don't know what the final sentence would have been had she not applied the five levels. We must assume per Cardi, and everything in this case tells us, that she followed the law of Cardi correctly. She took the guideline sentence, and she bore it in mind throughout the process. That's why all these standards of proof are still important. That's why due process is still at issue here. Because Cardi has said that that's what we're going to do. We're going to start with the guideline range. It still has a tremendous impact on the reasoning of courts today as a practical matter, and now with Cardi, it has a tremendous impact as a legal matter as well. It is also important for this Court to look at the context, I think, of the guidelines themselves. 2B1.1b9 starts with, you should give this fairly dramatic enhancement of five levels if the defendant removed his scheme from the United States to avoid law enforcement. And that's really the crux, I think, of the reasoning. I'm not an expert on the reasoning of the Sentencing Commission. I know we have the advantage of having someone who is on this panel. But it seems to me that's the purpose behind this enhancement, to take a fraud scheme, not a conspiracy case, but a fraud scheme, and say, you know, if this guy was committing fraud, and he did all these machinations, and there were sophisticated means to try to thwart law enforcement, well, that makes it harder for everybody, more expensive and more complicated. He should be punished for that. That is not the case with Mr. Foncher. And I think we have to take a look at the rationale behind this enhancement. There's no reason for it to apply to Mr. Foncher, especially when there's been no reliable finding that Mr. Foncher entered this conspiracy saying,  I mean, that's the only way, reasonably, that this enhancement would apply. And if we're going to decide that the guidelines are reasonable, per se, although Cardi did not say that, it did say that if you give a guideline sentence, you're not really going to have to explain it, which is, I think that Judge Kosinski is right. That's tantamount to saying we're going to presume a guideline sentence is reasonable. Then we should look at the reasonableness of the guideline as well in this analysis. Absent any further questions, I'm out of time. Thank you very much. The case is now submitted. Thank you very much for your arguments presented here today. We are now ready to proceed with the last matter on the calendar, which is United States v. Christopher Inouye. I'd like to reserve five minutes for rebuttal.
judges: Conlon, Pregerson, Murguia